UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LAQUAWN PERRY,**

    Plaintiff,                      Case No. 05-cv-937
                                       JUDGE GREGORY L. FROST
    vs.                           Magistrate Judge Abel

**OHIO HIGH SCHOOL ATHLETIC
ASSOCIATION et. al.,**

    Defendants.

## OPINION AND ORDER

### I. Background

Defendant, Columbus Public Schools ("CPS"), is a member of the Ohio High School Athletic Association ("OHSAA") and has agreed to abide by the various rules, regulations, and bylaws of the OHSAA as part of its membership agreement. (Doc. # 45-2 ¶ 4.) In April 2004, Plaintiff transferred from Brookhaven High School to Africentric High School ("Africentric"), which is one of the high schools within the CPS district. (Doc. # 1 ¶ 7). The school is a member of the OHSAA. *Id.*

The OHSAA's bylaw 4-7-3 concerns the athletic eligibility of students who transfer between schools within the same school district. It provides that the "superintendent or person delegated by the superintendent of either a non-public or public school system may transfer students within the system without jeopardizing their eligibility. Such transfers are eligible *only after approval by the Commissioner*." (Doc. # 45 at 1, 2)(emphasis added); *see also* Doc. # 1 ¶ 16.) CPS has trained its athletic directors and personnel on the requirements of bylaw 4-7-3 and the process for determining eligibility of student athletes who transfer between schools within

1

the district. (Doc. # 45 at 2.)  Specifically, the Director of the Department of Student Activities trained all athletic directors, including the former Africentric athletic director, by performing the following: annual summer workshops for all athletic directors; pre-season meetings with athletic directors, principals, and coaches in the fall and spring; and bi-weekly meetings with all athletic directors. (Doc. # 45-2 ¶ 7).  Africentric's former athletic director attended all the workshops and meetings and had opportunities to speak with the Department of Student Activities regarding any questions or concerns on eligibility and any other issue.  *Id.*

Prior to Plaintiff's participation in sports at Africentric High School, Africentric's former athletic director was required to comply with OHSAA bylaw 4-7-3.  *Id.*  ¶¶ 8, 9, 12, 16-17.  Standard bylaw 4-7-3 protocol instructs the athletic director of each school to send or hand deliver the student athlete's name, birth date, transferee and transferor school, and dates of enrollment to the CPS's Department of Student Activities for all student athletes who made intradistrict transfers.  *Id.* ¶ 9.  CPS's Department of Student Activities has no authority to approve or disapprove any request for student athlete transfers.  *Id.* ¶ 13.  Rather, the Department of Student Activities acts as a "conduit" for the passage of information; once it receives the transfer request, it must submit to the OHSAA's office the request for approval of the student athlete's intradistrict transfer.  *Id.* ¶ 13.  The Department of Student Activities then notifies the particular athletic director whether the OHSAA approved or disapproved the student athlete's intradistrict transfer in accordance with bylaw 4-7-3.  *Id. ¶* 9.  CPS also instructs the athletic directors that a student athlete who transferred within the district could not participate in sporting events for his or her school until approval from the OHSAA.  *Id.* ¶ 10.

In this case, the former Africentric athletic director never sent a request for approval of

2

Plaintiff's transfer under OHSAA bylaw 4-7-3 to CPS's Department of Student Activities. *Id.* ¶ 17. Consequently, the Department of Student Activities never received a request to submit to the OHSAA for approval of Plaintiff's intradistrict transfer, and therefore the OHSAA did not respond regarding approval or disapproval of Plaintiff's transfer as required under bylaw 4-7-3. *Id.* ¶¶ 16, 17-19. Upon realization that OHSAA had never approved Plaintiff's transfer to Africentric, the Department of Student Activities then notified the OHSAA that CPS had no documentation establishing that Plaintiff's transfer was approved as required under bylaw 4-7-3. *Id.* ¶ 20. Because Plaintiff was an ineligible transfer, the OSHAA required under bylaw 11-2-1 that Africentric forfeit all basketball games in which Plaintiff had participated, which was the entire 2004-05 basketball season including the state championship game. *Id.* ¶ 21. Plaintiff claims to have received the most valuable player ("MVP") award by the OHSAA or CPS. *Id.* ¶ 22. CPS has no knowledge of the details or retraction of Plaintiff's award. *Id.* It is clear, however, that neither OHSAA nor CPS was responsible for presenting the award or retracting it. *Id.*

Plaintiff then sued OHSAA and CPS in the Franklin County, Ohio Court of Common Pleas. Plaintiff asserts that both Defendants violated his: (1) procedural due process rights under 42 U.S.C. § 1983; (2) First Amendment rights; and (3) due process rights. (Doc. # 1 ¶¶ 1-34.) Additionally, Plaintiff asserts a claim for negligence against CPS. Plaintiff seeks relief in the form of an injunction, monetary damages, and attorney's fees and costs.

OHSAA and CPS removed this action to this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1441 on October 13, 2005. (Doc. # 1.) In its March 22, 2006 Opinion and Order, this Court granted in part and denied in part OHSAA's Motion to Dismiss and thereby dismissed Plaintiff's

3

free speech and procedural due process claims against OHSAA. (Doc. # 34.) After Plaintiff and OHSAA reached a settlement agreement, this Court granted Plaintiff's motion to dismiss all claims against OHSAA and dismissed OHSAA as a party on July 20, 2006. (Doc. # 44.) CPS now moves for summary judgment. (Doc. # 45.) Plaintiff has failed to respond on all claims against it.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

The Court must therefore grant a motion for summary judgment here if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to

4

establish the existence of an element that is essential to his case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

### III. Analysis

#### A. Procedural Due Process

Plaintiff alleges in his § 1983 procedural due process claim that he was deprived of his protected interest in his MVP award, his state basketball title, and his membership on the Africentric basketball team by CPS when CPS failed to provide him with notice and an opportunity for a hearing on his ineligibility and took his MVP award.[1] (Doc. # 1 ¶¶ 36, 38.) CPS argues that it is entitled to summary judgment on Plaintiff's § 1983 procedural due process claim because Plaintiff cannot establish the elements of a procedural due process claim. (Doc. # 45-1 at 4.) Specifically, CPS posits that the alleged property interest here-- namely, the interest in participating in interscholastic athletics-- is not a liberty or property interest that the

---

[1] In its March 22, 2006 Opinion & Order granting in part and denying in part OSHAA's Motion to Dismiss, this Court, being required to accept as true all factual allegations, dismissed Plaintiff's procedural due process claim stating that Plaintiff did not have a protected property interest in his MVP award, state basketball title, and membership on the Africentric's basketball team. (Doc. # 34 at 5.) Here, the Court notes that despite Plaintiff's allegations in the Complaint, the evidence before this Court on summary judgment shows that CPS did not give Plaintiff this award and that CPS has no knowledge of the details or retraction of Plaintiff's award. (Doc. # 45-2 ¶ 22.) Therefore, the Court may only consider whether Plaintiff's membership on the Africentric's basketball team and participation in all of its games, including the state championship, constitutes a protected interest. *Celotex Corp.* 477 U.S. at 324 (stating "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56©), except the mere pleadings themselves.")

Constitution protects. *Id.* The Court finds that CPS's argument is correct.

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Therefore, a plaintiff must allege two elements to establish a *prima facie* case under section 1983: (1) that the action occurred "under color of law" and (2) that the action was a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). (Doc. # 1 ¶¶ 13, 19, 20, 23.)

To establish a procedural due process claim pursuant to § 1983, a plaintiff must prove three elements: (1) that he has a life, liberty, or property interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution, (2) that he was deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford him adequate procedural rights prior to depriving him of his protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) *(*citing *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)). Regarding the third element, the Sixth Circuit stated that "the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).

The Sixth Circuit has held that student-athletes have neither a liberty nor a property interest in participating in interscholastic athletics. *Brindisi v. Regano*, 20 Fed. Appx. 508, 510 (6th Cir. 2001).[2] Specifically, the Sixth Circuit has held that "the opportunity to participate in

---

[2] The Court recognizes that *Brindisi* is not binding precedent. However, given the lack of published case law on this issue, the Court will consider *Brindisi* as persuasive authority. *Poindexter v. McKee*, No. 5:05-cv-65, 2006 U.S. Dist. LEXIS 8322, at *8 n.1 (W.D. Mich. 2006).

extracurricular activities is not, by and in itself, a property interest." *Id.* (citing *Pegram v. Nelson*, 469 F. Supp. 1134, 1139 (M.D.N.C. 1979); *Wooten v. Pleasant Hope School Dist.*, 139 F. Supp. 2d 835, 840-41 (W.D. Mo. 2000)). Moreover, in Plaintiff's suit against the OHSAA this Court previously held that because Plaintiff has no protected life or property interest in his membership on the Africentric basketball team he has no protected interest in participation in all of its games, including the state championship. (Doc. # 34 at 5.) Without a protected interest, Plaintiff's procedural due process claim fails as a matter of law. This Court **GRANTS** CPS's motion for summary judgment on Plaintiff's procedural due process claim.

        B.       **First Amendment**

Next, CPS moves for summary judgment on Plaintiff's First Amendment claim. CPS, as a member of OHSAA, has agreed to abide by the various rules, regulations, and bylaws of the OHSAA as part of its membership agreement. (Doc. # 45-2 ¶ 4.) Plaintiff alleges that the constitution, regulations, and bylaws adopted by CPS are overly broad and therefore violate his right of freedom of association under the First Amendment and the parallel provision of the Ohio Constitution. (Doc. # 1 ¶¶ 1, 49-51.) In support of this contention, Plaintiff alleges that the Commissioner's authority under the OHSAA's bylaw 11-2-1 is a prior restraint on Plaintiff's free speech because the authority is not narrowly tailored and grants "unfettered power" to the OHSAA. *Id.* CPS posits that Plaintiff fails to state a claim upon which relief can be granted in this regard because there is no constitutionally protected right to participate in interscholastic athletics. (Doc. # 8 at 7,8.)

Preliminarily, the Court again notes that the Ohio Supreme Court has held that because "under the Ohio Constitution, free speech guarantees are no broader than those guaranteed by the First Amendment to the United States Constitution . . . the First Amendment is the proper basis for interpretation of Section 11, Article I, Ohio Constitution, the provision that establishes those free speech guarantees in Ohio." *City of Cleveland v. Trzebuckowski*, 85 Ohio St. 3d 524, 528, 709 N.E.2d 1148, 1152 (1999) (citations omitted); *see also State ex rel. Beacon Journal Publ'g Co. v. Bond*, 98 Ohio St. 3d 146, 151, 781 N.E.2d 180, 187 (2002). Thus, the Court shall address Plaintiff's federal and state free speech claims simultaneously.

Although Plaintiff's free speech claim is against CPS and not OSHAA, the same bylaw, 11-2-1, is at issue, and therefore this Court's analysis remains the same. The United States Supreme Court has held that in order to succeed on an overbreadth claim, a plaintiff must show that the overly broad rule reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). This Court has previously held that Plaintiff's free speech claim faced an insurmountable hurdle. (Doc. # 34.)

First, Association Bylaw 11-2-1 provides "all athletic contests in which ineligible players have participated *shall* be forfeited." (Doc. # 45-2 ¶ 22.) The Sixth Circuit has held that there is no constitutionally protected right to participate in interscholastic athletics. *Burrows v. Ohio High School Athletic Ass'n*, 712 F. Supp. 620, 627 (S.D. Ohio 1988) (citing *Hamilton v. Tennessee Secondary Sch. Athletic Ass'n*, 552 F.2d 681, 682 (6th Cir. 1976)). Consequently, the Court concludes that Plaintiff's free speech overbreadth challenge fails as a matter of law because the bylaw does not apply to a constitutionally protected interest. This Court also

**GRANTS** CPS's motion for summary judgement. (Doc. # 45-1.)

    **C.**  **Due Process Vagueness Claim**

Next, Plaintiff asserts that CPS adopted and executed the constitution, bylaws, and regulations of the OHSAA, which are impermissibly vague and therefore violates his right to due process. (Doc. # 1 ¶¶ 53-56.)

The void-for-vagueness doctrine has two primary purposes: ensuring fair notice and providing standards for enforcement. *Columbia Natural Resources v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995). Accordingly, the doctrine reflects the principle that " 'a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process law.' " *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)). In other words, a law must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly. *See Graynard v. City of Rockford*, 408 U.S. 104, 108 (1972).

This Court has concluded that the terms of the bylaw 4-7-3 are quite clear: "[T]he superintendent or person delegated by the superintendent of either a non-public or public school system may transfer students within the system without jeopardizing their eligibility. Such transfers are eligible *only after approval by the Commissioner*." (Doc. # 8 at 3 (emphasis added); *see also* Doc. # 1 ¶ 16). This Court also has stated that what is less clear is what guides the Commissioner in determining whether to approve or disapprove transfers, accordingly the Court does recognize that on its face the bylaw presents some danger of arbitrary enforcement.

(Doc. # 34 at 7.) Notably, this Court's worries were relevant because the defendant in the prior Opinion and Order was the OHSAA and not CPS. The Court was concerned with the manner of enforcement because of the power vested in the OHSAA commissioner to approve or deny intradistrict student transfers under bylaw 4-7-3.

The Court's focus in its prior decision does not, however, apply here. Standard bylaw 4-7-3 protocol instructs the athletic director of each school to send or hand-deliver the student athlete's name, birth date, transferee and transferor school, and dates of enrollment to the CPS's Department of Student Activities for all student athletes who made an intradistrict transfer. *Id.* ¶ 9. CPS's Department of Student Activities has no authority to approve or disapprove any request for student athlete transfers. *Id.* ¶ 13. Rather, the Department of Student Activities acts as a "conduit" for the passage of information; once it receives the transfer request, it must submit to the OHSAA's office the request for approval of the student athlete's intradistrict transfer. *Id.* ¶ 13. Normally, the Department of Student Activities would then notify the particular athletic director whether the OHSAA approved or disapproved the student athlete's intradistrict transfer in accordance with bylaw 4-7-3. *Id.* Thus, this Court recognized that the potential danger of arbitrary enforcement of 4-7-3, if any, lies in the decision- making power of OHSAA and not CPS. Therefore, Plaintiff's void-for-vagueness challenge fails solely on the grounds that it is improperly directed. Nevertheless, Plaintiff has also failed to produce any evidence to support his contention that CPS enforced bylaw 4-7-3 against him in an arbitrary manner. (Doc. # 1 ¶ 32.) Rather, the evidentiary record suggests the opposite.

In this case, the former Africentric athletic director never sent a request for approval of Plaintiff's transfer under OHSAA bylaw 4-7-3 to CPS's Department of Student Activities. (Doc.

45-2 ¶ 17.) Consequently, the Department of Student Activities never received a request to submit to the OHSAA for approval of Plaintiff's intradistrict transfer, and therefore the OHSAA did not respond regarding approval or disapproval of Plaintiff's transfer as required under bylaw 4-7-3. *Id.* ¶¶ 16,17-19. Upon realization that OHSAA had never approved Plaintiff's transfer to Africentric, the Department of Student Activities then notified the OHSAA that CPS had no documentation establishing that Plaintiff transfer was approved as required under bylaw 4-7-3. *Id.* ¶ 20. Thus, Plaintiff not only improperly directs his due process void-for-vagueness challenge against CPS but also has produced no evidence that CPS enforced the bylaws against him in an arbitrary manner. Indeed, CPS has no authority to enforce the bylaws. The Court finds that Plaintiff's void- for-vagueness challenges fails as a matter of law and therefore **GRANTS** CPS's motion for summary judgment on this claim.

### D. Negligence

Plaintiff asserts a state law negligence claim against CPS. Plaintiff argues that CPS owed a duty to properly train, supervise, and direct Africentric's athletic director, principal and counselors on OHSAA's rules and failed to do so in breach of its duty. (Doc. # 1 ¶¶ 61.) CPS argues that it entitled to immunity because it is a political subdivision as defined by the Ohio Revised Code. (Doc. # 45-1 at 10.) The Court finds CPS's argument to be correct.

The Political Subdivision Tort Liability Act, codified in Ohio Rev. Code Chapter 2744, requires a multi-step analysis to determine whether a political subdivision is entitled to immunity from civil liability. Ohio Rev. Code § 2744.02(A)(1); *Hubbard v. Canton City Sch. Bd of Ed.*, 97 Ohio St.3d 451, 780 N.E. 2d 543 (Ohio 2002). The first tier of the analysis imposes general immunity on all political subdivisions for damages. *Id.* CPS clearly meets the first step of the

analysis and qualifies for general immunity because Ohio Rev. Code § 2744.01(F) declares public schools districts to be political subdivisions and Ohio Rev. Code § 2744.01(C)(2) states that the provision of a system of public education is a governmental function. *See also Hart v. Paint Valley Local Sch. District*, No. C2-01-004, 2002 WL 31951264 at *11 (S.D. Ohio Nov. 15, 2002).

The second tier of the analysis requires the Court to determine whether any of the exceptions to immunity listed in Ohio Rev. Code § 2744.02(B) apply.[3] Plaintiff's allegations against CPS relate to negligence in properly training, supervising and directing its personnel. (Doc. # 1 ¶ 61.) Thus, Plaintiff has made no showing, nor does the Court find, that any of the exceptions to the statute are applicable in this case.

Because the Court has found that none of the abrogating immunity exceptions apply, it need not consider the third tier of immunity analysis, which applies only when Defendant seeks to reinstate immunity based on one of the defenses contained in Ohio Rev. Code § 2744.03 after its immunity has been stripped. Consequently, this Court finds that CPS is entitled to immunity on Plaintiff's negligence claim and therefore **GRANTS** CPS's motion for summary judgment on this claim.

## IV. Conclusion

In conclusion, this Court **GRANTS** in full CPS's motion for summary judgment (Doc. #

---

[3] These exceptions include: (1) the negligent non-emergency operation of a motor vehicle by a government employee within the scope of employment; (2) the negligent act of a government employee with respect to proprietary functions of the political subdivision; (3) the failure to keep public roads and other public grounds open, in repair and free from nuisance; (4) negligence by governmental employees that causes injury within or on the grounds of, and is due to physical defects within or on the grounds of, buildings used in the performance of a governmental function, not including jails or any other detention facility; and (5) liability expressly imposed by Ohio Rev. Code §§ 2743.02 and 5591.37. Ohio Rev. Code 2744.02(B).

45).  The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

    **IT IS SO ORDERED.**

                                               **/s/ Gregory L. Frost**
                                               **GREGORY L. FROST**
                                               **UNITED STATES DISTRICT JUDGE**